## EX PARTE J. C. ROBERTS.

No. 24047. Delivered March 17, 1948.

*Frank S. Roberts*, of Breckenridge, for appellant .

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Appellant stands charged by indictment with the murder of his wife. His application for bail, pending trial, was refused. The appeal is from that order.

On the morning of September 11, 1947, appellant contacted the sheriff of the county in his (the sheriff's) office, telling him that he thought his wife was losing her mind and was going to commit suicide. The sheriff suggested various things to do and have done to avert such a tragedy, none of which appellant assented to. Appellant left the sheriff after making the statement:

"No, she has definitely made up her mind to commit suicide, and if you get a 'phone call from me you will know what has happened. I do not want any publicity in this on account of my children, but if you get a 'phone call from me, you will know that has happened."

Appellant left the office and shortly thereafter the sheriff saw appellant's wife drive her car and park it on the street. He saw the wife engage in conversation with some friends, "laughing and talking." Soon afterward he saw appellant and said to him: "I just saw your wife driving down the street in her car," to which appellant replied, "Yes, I saw her down there."

About eleven o'clock the night of September 12, 1947, and the day following the above incident, the sheriff received a telephone call from the appellant, informing him: "It has happened * * *. You had better come down here and bring a doctor and the undertaker." The sheriff, accompanied by his wife, went to appellant's home and there found in bed the body of deceased, dressed in her night gown. Death had been caused by a pistol bullet entering the right temple. The pistol was on the floor by the bed.

Appellant's explanation of the matter was to the effect that deceased had killed herself during his absence from the room. The sheriff advised him that an investigation into her death would have to be made—to which appellant replied, "I know it is necessary and it will be necessary for an investigation as I am beneficiary in her insurance policy." Without detailing the steps taken, the sheriff and other officers began and continued their investigation.

On the morning of September 24, 1947, or twelve days after the death of the wife, appellant made the following voluntary statement to the officers:

"My name is J. C. Roberts. I am 55 years of age. On September 12, 1947 between 10:30 and 11:00 p. m. I killed my wife Kate Roberts by shooting her with a 380 savage automatic pistol. She was lying in bed when I shot her though the right temple, but I fo not believe she was asleep. I had been having a lot of trouble with my teeth and was very nervous, and I don't know what came over me when I killed my wife or why. I did it. No one else is implicated in this case with me. I did it and planned it myself. I killed my wife in Dimmit County, Texas.

J. C. R.

"Witnesses:

"JOE H. FRAZIER                    "J. C. ROBERTS
"HENRY BILDERBROCK."

The foregoing are the facts.

Art. 1, Sec. 11 of our Constitution provides that all cases are bailable except capital cases where the proof is evident. The term "proof * * * evident", as there used, means that the accused, with a cool and deliberate mind and formed design, did maliciously kill another and that a dispassionate jury would not only convict him but would probably assess the death penalty also.

Appellant recognizes the correctness of the definition stated but relies upon that line of cases existing under the law of murder as it existed prior to the enactment of our present murder statutes, wherein the crime of murder was divided into degrees—that is, murder in the first and second degree—and in which it was held that facts showing murder in the second degree constituted a bailable case. Appellant insists that the facts here presented show only a killing which would have been murder in the second degree under the old statute. Now, every unlawful killing upon malice, either express or implied, is a capital offense, punishable by death. Consequently, those cases limiting non-bailable murder cases only to those with express malice are no longer applicable.

We have no difficulty in arriving at the conclusion that the facts here presented show a killing where "the proof is evident." Here we have a motive—the life insurance of which appellant was the beneficiary; we have preparation, shown by the first conversation with the sheriff; we have deliberation and planned design, as shown by his statement that he planned the killing of his wife and evidencing malice. While it is true that in the confession appellant states that he had been having trouble with his teeth and was very nervous, such facts would constitute no defense to the charge of murder. In our opinion, the facts here presented are stronger than those set forth in Ex Parte Patterson, 196 S. W. (2d) 832, wherein a denial of bail in a murder case was sustained. The conclusion is reached that under the facts here presented, we cannot say that the trial court abused the discretion lodged in him when he denied bail. As supporting this conclusion, see also Ex Parte Moody, 196 S. W. (2d) 931; Ex Parte Lynch, 200 S. W. (2d) 828; and Ex Parte Scales, 133 Tex. Cr. R. 636, 113 S. W. (2d) 912.

The judgment of the trial court is affirmed.

Opinion approved by the Court.